Whether this case is examined with reference to Ohio v. Roberts or Crawford, it is crystal clear that his rights under the Confrontation Clause were violated when the trial court admitted statements that were made during a police interview over five hours after an allegedly exciting event. Obviously, if Crawford is retroactive, you're much better off than if it's not. You know, Your Honor, I think we win either way. I think we have a very compelling case either way. You have a more compelling case. Of course, I was very pleased when Davis came down. There's no question about that. And I'm hoping, and I did read the transcript of the Supreme Court argument several times. You know, of course, I hope that the reactivity is the same. Is there any reason we shouldn't hold this case? Pardon me? Is there any reason we shouldn't hold this case for the Supreme Court to rule? No, no. I think that would – I don't think it would make sense not to. Why? It seems to me if your first premise is true, then we should decide the case. That's right. No, that's true. But if Judge Kaczynski thinks it's easier to affirm under Crawford than under Roberts, then we'll do it. But you said it doesn't make any difference, that you won either way. Well, I think that we win either way. I think that the spontaneous statement exception was twisted out of any resemblance to what it was intended to be. Don't we have a definitive statement by the State court that this is an exception to the hearsay rule? It is clear that there is an exception to the hearsay rule for spontaneous statements. But we have a statement by a State court, under State law, that this fits. But, Your Honor — How do we attack a definitive conclusion by a State that this works? Because the Sixth Amendment has to require more than just slapping a label on something. Well, this is – we don't have slapping a label on something. We have an analysis by a State court. Well, the analysis – Excuse me. Excuse me. And the State court tells us that this adequately fits. Now, maybe had I been on the State court, I might have disagreed. But we're confronted with a State court conclusion that this is an excited utterance or spontaneous declaration, whatever you want to call it. Well – How do we unlodge that? How do we dislodge that? Show me legally the steps, given the position that we're in as a Federal court. I think you have to look at the State court's reason for concluding that it was – that it was a spontaneous statement. But we have to disagree with the State court. Pardon me? We have to disagree with the State court on a State court issue. Well, but it's not – It's a State court issue, moreover, a State court – a factual issue as well. I mean, as I read the record, the judge said, look, the 9-11 call, she was calm by then. So the 9-11 call doesn't come in. So this is not a judge who said, well, anything that happens within 24 hours of the event is going to be excited utterance or spontaneous statement. So obviously the judge who made findings as to the one earlier statement. And then he says, but when the police showed up, she was excited and, you know, the situation changed. So isn't that a factual determination? Isn't – isn't – isn't an ennui bound by that? I don't think you are, because ultimately it's your province to determine reliability. And if, you know, we start from the premise that the Supreme Court has held that spontaneous statements are reliable. But the court has also made many – made many remarks and has elaborated on what it is about a spontaneous statement that makes it intrinsically reliable. I hear you asking us to sit as an appellate court in the California system almost. No. The problem that Judge Kaczynski and I are trying to lay out to you is that you've got – you have a, I'm repeating myself, definitive conclusion by the California courts and there are facts. People were upset, emotionally upset to the point of shaking and fearful. And so by what lever do we get in there and undo that on the ground that it's not supported by fact intrinsically, extrinsically? I mean, analytically, how do you get at this? Hmm. Don't you rely on Lilly? The Lilly says that we assume that the statements were spontaneous statements as a matter of State law. But the question of whether the statements fall within a firmly rooted hearsay exception for the Confrontation Clause purposes is a question of Federal law. Yes. Isn't that the answer? Yes, I think that is the answer. And of course – Spontaneous declarations are recognized in Federal law. Of course they are. But the Federal court is the court that must decide whether a particular – whether the statement – whether the statement is reliable within the rubric that the Supreme Court has laid out. I think that's where you have your difficulty. You don't look at every application of the – of an exception. You know, you have a dying declaration. I think that's one of the ones that's long established. And you don't look at every dying declaration to see whether or not the person really, really was dying or really, really was reliable under those circumstances. What you do is you determine whether or not a particular kind of hearsay exception generically has – is sufficiently well-established, has the right of liability and so on. And then the State courts apply it. The State courts say, well, the facts fit or the facts don't fit. I don't think we deconstruct every application of a hearsay rule to see whether or not it's reliable. Is it? Do we? But, for example, in Bochting, I don't think there's any question that if the court – if the Supreme Court holds that it – that Bochting is not retroactive, that the – that the Petitioner there is going to be able to go back and argue that the statement should not have come in under the – under the exception. Well, that sounds like the case before the Supreme Court is moot, then. No, no. You know, why decide that whole case if he's got a backup argument if he could win anyway? Well, that actually was discussed in the argument. Yeah. Which is – which is interesting. But, Your Honor, I think – Maybe they're going to dismiss as improbably granted, huh? Pardon me? Maybe they're going to dismiss. The – this Court is the judge ultimately of reliability. No, it isn't. I mean, what case holds that on state law? What case holds that? Hmm. You want to take a couple minutes for a bottle? Pardon me? Would you like to take a couple minutes for a bottle? That would be great. Thank you. Thank you. I will hear from the government. May it please the Court. Deputy Attorney General Yun Lee for Respondent. Initially, we acknowledge that Crawford does apply retroactively to this case under this Court's decision in Bochting. However, in light of the Supreme Court's review of Bochting, we respectfully submit that Crawford should not apply retroactively. Well, if Bochting comes out the wrong way for you, is that the end of the case? I'm sorry? If Bochting comes out against you, is that the end of this case? No, it isn't, because even if Crawford does apply retroactively, Parrish's statement to Officer Dixon was not testimonial under Crawford because there was an ongoing emergency at the time. How is it an ongoing emergency six hours after the events? There was an ongoing emergency because, well, in Davis, the Court analyzed Hammond and why in that case there was no ongoing emergency. And our case is very different from Hammond. For instance, in Hammond, the violent behavior ended when the officers came to the house. When the officers came, the husband was inside the house and the wife was already outside. The officers saw some glasses on the ground, but they didn't hear any commotions or anything. And when the officers approached the wife, she said everything was fine, there's nothing wrong. And then when the officers spoke to them, spoke to the husband and the wife, they separated them and spoke to them separately. In our case, Parrish and Petitioner had a five-year on-and-off relationship. Oftentimes it was very violent. In January of that same year, she obtained a protective order against him, barring him from coming to her house. But the state trial judge said that the 9-11 call itself was inadmissible, was the most calm statement he'd ever heard of a 9-11 call. And then there's six hours that goes by, and then you have Dickinson coming in and interviewing the mother, and he says she was almost shaking. What is that, almost shaking? I mean, the characterization and the words that are used, it seems to me that the very problem the Court addressed, that you shouldn't have an opportunity to reflect on what had happened earlier and then have that come in as a spontaneous declaration. And isn't that what happened here? No, we disagree, Your Honor. The 9-11 call, the Court did say it was the calmest 9-11 call that the Court had ever heard. However, the Court only heard the tape. He was not privy to looking at her when she made the statement. Officer Dixon, when he arrived, he not only saw Parrish and Mercedes, but he was also able to observe and hear what she had to say. And I think what she said was, what the officer said, describing Parrish's demeanor, was that she was very fearful, emotional, to the point of shaking. And I think Pauline also stated that Petitioner had mentally and physically thrashed or whipped Parrish. So by both of their statements, I think it was clear that she was under distress. And as far as your question regarding, well, didn't they have an opportunity to reflect, I think that's where all the factors come in to determine that exact question, you know, was there time to reflect. And in answering that question, the lapse of time is not the only factor to consider. There are other factors to consider as well, including the physical and mental condition of the declarant, the characteristic of the event. In this case, it was not just a situation where he, let's say, just punched her and left. He threatened a future harm. It was a harm that he said, I'll smoke you and your daughter. She had no idea whether he was going to do that. Was that in connection with the statement? That was the statement, I'll smoke you and your daughter. Yeah, but that was the statement. But how much later? That was around 11 in the morning. And then did he leave voluntarily? It appears that he, I believe the record shows that he left about 15 to 20 minutes later. Five days later, he did return to Parrish's house, broke down doors, pulled out the phone cord, and then officers were called in around 1 o'clock in the morning and he was arrested. So the relationship here is very volatile. A protective order is not keeping him away. He had just threatened to kill both him, both Parrish and her daughter. That's what the officer says. Unfortunately, Parrish didn't come in and testify. Right. Why didn't the State put on the witness who was threatened? She was in custody the day before she was supposed to testify. I'm not sure what happened. But even though she was not at the ‑‑ she did not testify. The daughter testified and said nothing like that happened. She didn't say nothing like that happened. She said she didn't remember the exact statement. She recalled ‑‑ She said nothing was said to her threatening he was never mean to her. She says she was scared of a petitioner. She says she was scared of him. She told the officer she was scared of him. She testified to that at the preliminary hearing. There's no crime in having people be scared of you. Right. But she didn't testify as to why she was scared. She was scared of us. I'm trying not to be. But you couldn't prove this case without Dickinson's hearsay testimony, could you? What is the proof in the record that he made the threat other than the hearsay? Other than the officer's statement. I think there was actually Pauline's statement also that said ‑‑ The grandmother, the day before Mercedes testified, the prosecutor had asked her, talked to her about it, and she heard Mercedes say, yeah, I was scared because he could have blown me away. So it wasn't just ‑‑ I'm sorry. That was not a ‑‑ How did that ‑‑ That was not evidence of what he said, that he threatened Harris and Mercedes, right? I think ‑‑ He just said he was scared. No, no. The grandmother did say that Mercedes told the prosecutor that she was scared of Petitioner because he could have blown her away, I believe, were her exact words. So that was also admitted into evidence. Was scared because he could have blown her away. He could have blown her away, right. But that's ‑‑ how does that help prove the statement that he actually made a threat? She could be scared of him. She could be scared that he will blow her away for lots of reasons. He's that kind of guy. He has, you know, that's very different from reporting that he threatened her, which is a crime that he was charged with. So I don't see how the ‑‑ I mean, the only way the threat comes in is through the officer's hearsay statement. Right. But also the Petitioners are not challenging Mercedes' testimony. The admission of Mercedes' statement only challenging the admission of Paris' statement. So Mercedes' statement is not before the court in terms of ‑‑ What is Mercedes' statement? Mercedes told the officer that she overheard Petitioner tell her mother that, say, I'll blow you and your daughter, I'll smoke you and your daughter. She did not see ‑‑ Well, what she was on the stand and recanted. She said she remembers nothing of the sort. So the case, I mean, so you have this officer's statement and then you have her own on the stand testimony that she, nothing like that was said. So, I mean, essentially it comes down to the officer's statement, right? Well, under Roberts, it would come to the officer's statement. Under Crawford, it would just be a matter of whether there was a testimonial statement. Where does White fit in here in making determination as to whether or not there was a clear disregard of Supreme Court authority? White says that the point of the time factor is that the declarant must not have an opportunity to reflect six hours between the events and the police being there. I think the courts have tried to answer that question by looking at the different factors. Time lapse is one of the factors, but also other factors. Where did the district court or the California appellate court consider time? The court said, I believe the state and also the district courts, that time factor alone is not determinative. Right. But then what? It's not alone, but what? Right. But here the officer observed Parrish and her demeanor at the time, and I think even though the Court had not mentioned, I think the fact that it was a threat of a future harm and a threat of killing both her and her daughter, the content of the statement is something to be considered as well. So that sounds like you've got a new exception to the hearsay rule, the relived experience exception. It's not really reliving the exception, Your Honor. Your Honor, I recited to a case that I believe was a Seventh Circuit case, Hartman. In that case, there was a decedent husband who overheard his wife and her lover plotting to kill him, and he had made statements to two different lawyers at two separate times. I think one of the lawyers he spoke to was the day before he was actually killed, retelling them about his fear of what he had overheard. So in that case, the court, without talking about the time factor, went through the three different elements under the Federal Rules of Evidence exception and found that, especially in light of the characteristic of the statement that his wife was plotting to kill him, and the lawyer's statement that he was in a state of panic when he made those statements. Was there any showing of unavailability here? I think in this trial court, they were going to get into the unavailability hearing, and then I think they ended up not having. Is that a long no? It said no, there was no unavailability hearing at the trial court. No unavailability finding, right? Right. Pretty sloppy, it seems to me. I mean, to let somebody get criminally convicted, put in prison nine years, without even a determination, the key witness who was threatened is, I mean, it's one thing if the guy is dead, like in the Seventh Circuit case you cited, but this person is available, alive, can be put on the stand, can be cross-examined, the jury can look at her. It's very difficult to understand why the prosecutors would do this. Is that unavailability? Or why the state court would not require presence or showing of unavailability? Unavailability is not an element of spontaneous declaration, is it? No, it isn't. And also under Crawford, and also Parris did not testify previously at the preliminary hearing, so there was no prior opportunity to cross-examine. So both of the prongs of Crawford were not met. But wasn't she in custody the day before she was supposed to testify? And why did they let her go? Because she said she wouldn't say what they wanted her to say, and then they could use Dickinson's testimony to establish the elements? I don't think that's — I don't know why exactly they — it wasn't on the record as to why they let her go. But I'm — You can be sure it wasn't to help defendant. But I'm assuming that they would have expected her to come in, or I'm not sure if she was transient, or — The challenge of this case may be, and we'll never know, is that this is a prototypical domestic violence case. I handled these cases for 17 years, and in 80 percent of the cases, spouses wanted nothing to do with the court. Trying to rope them and drag them into court was damn near impossible. That may have — that may be what happened in this case. And isn't that this point of the Sixth Amendment? Well, if what she said was testimonial, then Crawford would apply. But if what she said was not testimonial, then Crawford does not apply. Well, I mean, you can argue it's not testimonial, but how are you going to do that? Well, that's what we're — it was not testimonial because there was an ongoing emergency. In Davis, the court had — talking about Davis' case itself — So what was the emergency? In — What was the ongoing emergency? There was fire? There was some baby standing at the bottom of a well? Not that kind of — There was a ticking bomb somewhere? What was the ongoing emergency? That he had threatened to kill her and her — How is that different than reporting any other crime? You know, I've been robbed. Is that an ongoing emergency? I — you know, I — somebody just beat me up. Is that an ongoing emergency? Well, if somebody just beat me up, I think the harm is finished. He's already beaten up. And whatever she tells the investigator is trying to maybe, you know — But if the crime here is the threat, and he left voluntarily after 15 minutes, isn't that the same thing as being beat up? No, because the threat is a future harm, and he didn't say, well, I'm going to kill you right here and there. He said, I'll smoke you and your daughter. And knowing his tendency to violate the protective order and just come at will to her house and having that violent relationship, Parrish had no idea that he could have returned a day later or even two days later and carry out the threat. Was the protective order issued by the superior court? I'm not sure which court. Was it in evidence? It was testified to. I don't know if the exact court order was included into the evidence. I think she went to the closet and got all of the papers. Oh, yes. Right. When the police — she had collected all the papers, and I think the trial court said none of that comes in. Okay. I didn't remember that. So in Davis, the court had said, in talking about the 9-1-1 tape, that there was some discussion about whether the emergency had ended after the defendant in Davis had left the scene, and the court had said, well, it appears to have ended because the defendant had left the house. And then the Supreme Court stated that, well, the latter part of the 9-1-1 call may be testimonial. However, Davis Court also stated that, especially in cases involving domestic violence, that initial inquiries by officers may also be non-testimonial, depending on the circumstance. So just because the officer was there, present, does not mean that emergency had dissipated. It's just a matter of the whole circumstance, the parties' history, that one would have to look into. Okay. Thank you. So do we hold for Bogdan or not? Since the oral argument was just held in November, I believe November 1st, and it's already two months, maybe the court is close to handing out its decision. Can you give me a yes or no? I'm sorry. You don't have any objection to holding it? We don't have any. No, we don't have any objection. Okay. Thank you, Your Honor. I'll give you a minute for them. Oh, no, two minutes. You've got time. I think under ---- All right. Two minutes and 12 seconds. Go ahead. Okay. Well, I think that my argument is that what the State court here did was make an unreasonable determination of facts in light of the evidence and, you know, correctly state the law, but misapply the facts. Can any hearsay exception, state hearsay exception survive after a Crawford if it does not have an unavailability requirement? Not for ---- Oh, if it doesn't have an unavailability requirement? You just commented that there was no unavailability finding, presumably because there was no unavailability. No, because there were ---- There was no unavailability requirement. No. They're requiring now an availability and opportunity for cross-examination. They said it was ---- Where does it say that? It's in Crawford. In Crawford? On exceptions to the hearsay rule, there also has to be an unavailability? If there is for testimonial hearsay. Oh, excuse me. I didn't hear. Yes, for testimonial hearsay. Yeah, we don't ---- it's ---- we don't know what's going to happen. We don't know if Roberts is going to survive now for non-testimonial hearsay, but certainly for testimonial hearsay. And I just want to point out one other thing. And you think this is testimonial? Pardon me? You believe this is testimonial? I don't think there's any question that it's testimonial under Davis and Crawford. There was no ongoing emergency. It was an investigation and interrogation about past events rather than, you know, the present tense narrative. It was a peculiar kind of past event. It was a past event that portends future conduct. I mean, let's say the statement was, you know, I've placed a bomb under the clock tower, and it's going to go off in 24 hours and counting. Let's say that's the statement. Yes. I mean, that's a past event, and yet, you know, if this were reported to police, there would be nevertheless an ongoing emergency because it ---- now I've constructed a hypothetical that has a very specific end point and a very specific objective. But our case is not that different because, you know, if you take the statement at its full value, I guess smoke means shoot, right? And then there's pointing to the shiny object in the belt, which presumably could have been a gun or a knife or something like that. And the idea would be that he might come back and, you know, maybe they need a security detail or they need, you know, police need to pick him up. You know, they need to do something to keep him from making good on the threat. But that's not ---- I don't believe that that's the type of ongoing emergency the court was speaking of in Davis. Well, why not? You had a protective order that this guy obviously has decided he's going to pay no attention to in one of the most dangerous situations that any police officer will tell you exists, and that's problems between husbands and wives or ex-husbands and wives. There's a protective order. She's gone to court. She's tried to get the law on her side. The law now is that the police have no legal obligation to protect her, and this guy's threatening to kill her. Sounds like that might make somebody pretty anxious. Well, but this ---- but it doesn't have to do with her anxiety. The issue is whether the police at the time they're questioning her are, quote, investigating or addressing a pressing, life-threatening or, you know, physical harm-threatening situation. I'm not saying ---- you know, it doesn't have ---- the issue isn't whether the behavior was bad or frightening. The issue is whether, you know, what the police are doing at the time they're questioning the woman and what, you know, what is in her mind at the time. No, it's more where she is in the universe of things. That's right. Yes, it is. It does focus on the subjective feeling of the declarant rather than the intent of the questioning police officer. You know, I think you're absolutely correct. A rational judge could have ruled that too much time had passed and kept it out. The problem here, as I said before, is you've got a definitive, factually-based statement from state court that said, no, this qualifies. That's the problem. You know, Your Honor, the only ---- there is no ---- well, let me step back. Ever handled domestic violence cases? Pardon me? Yes. Yes. Do you deal with the women? Horrible. Do you deal with the women? Incredibly difficult. You know what I'm getting at. Yes, I absolutely do. I'm getting people into counseling, and I've dealt with some of them, some clients repeatedly. I know exactly what the court is talking about. But let me just go back to something about this exception, as I may. The Supreme Court has talked about the rationales. Judge Malloy quoted White, I believe, over and over again. You know, in White, in Wright, and in Crawford, and in Davis, for the spontaneous statement exception. And every enunciation of what it is talks about the reflective capacities being stilled, you know, that the statement has to be made so hard on the heels of the evidence, that there was no opportunity for the declarant to consider, contrive, in the words of Justice O'Connor, confabulate, fabricate. You know, what the court did in Crawford, I think, is very, very interesting, because Justice Scalia was, you know, when he went through the history of the Confrontation Clause and their jurisprudence with respect to testimonial evidence, he said, well, there is only one case in which it is even arguable that we, the Supreme Court, may have issued a ruling that would permit testimonial evidence to be admitted without cross-examination. And that was White in the spontaneous statement sphere. But he went back and quoted the 17th century, I think it was 1689, case that was sort of the progenitor of all this, of the framer's view of the spontaneous statement exception. And in that case, it said that the injury had to be, well, let me see. Let me flip to it, but basically contemporaneously, contemporaneous with the hurt suffered to ensure that these reflective abilities were stilled. And Justice Scalia hypothesized that perhaps no testimonial evidence at all could squeak through under that reading of the exception. So when we have a State court who, I'm sure in good faith, but, you know, and it may have been one of these things. Of course, the judge has to, you know, sometimes there is a sense of equities when one is making evidentiary rulings, and sometimes the court, you know, give it and then on one hand and take it away on the other. And the court did exclude the 911 call as not spontaneous. And then, you know, uprolls this subsequent statement made after the 911 call, and the judge decided to admit it. But we don't know one single solitary thing about what happened between 11, 10, and the morning and 5, whatever it was, 4, 440 when Officer Dixon rolled into these women's apartments to question them. We know nothing except that Parrish was calm in the interim and created the calmest or one of the calmest 911 tapes this judge had ever heard. How is it possible, no matter how agitated Parrish appeared to be, at the time of the incident, I mean at the time of the questioning by the officer, to surmise from that agitation that her reflective capacity was still during that entire five and a half hour interval? There is no rational basis for drawing that kind of a conclusion. There is no evidence at all. The only evidence we have is the opposite. It says that she was so calm that this, you know, here we've got something that's actually recorded, and it doesn't, it's not going to fly. So I just, I believe that this court has the ability to conclude that... So do we hold? Do we hold, or do we rule now? Oh, you, please hold. Thank you. Thank you very much. We'll defer submission of this case until we have a chance to confer as to whether or not we will submit now. We'll defer for abating.
judges: Kozinski, Trott, Molloy